CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 3 1 2020

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| JOHN T., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 5:18-CV-148 |
| | ) |
| v. | ) |
| | ) |
| ANDREW SAUL, Commissioner of | ) |
| Social Security, | ) By:  Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant | ) |

### MEMORANDUM OPINION

This social security disability appeal was filed by Plaintiff John T. (John), who is proceeding pro se. The appeal was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. At the time John filed his social security disability appeal, he also appeared to name the United States Department of Veterans Affairs (VA) as a defendant, alleging that he disagreed with a "Navy Board for Correction of Records" statement and decision of February 11, 2001. ECF No. 1. The magistrate judge filed a report and recommendation (R&R) on July 1, 2020, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. ECF No. 35. The magistrate judge also recommended dismissal of John's cause of action against the VA. John has filed objections to the R&R and this matter is now ripe for the court's consideration. As discussed more fully below, the court **REJECTS** the portion of the R&R which recommends affirming the

decision of the Commissioner, **REMANDS** John's case to the Commissioner for further consideration, and **DISMISSES** the VA from this lawsuit.

## I. Background

John, a veteran of the United States Navy and Navy Reserve, alleges that he is disabled by schizophrenia, somnambulism, paranoia, and post-traumatic stress disorder (PTSD), triggered in part by early childhood trauma including sexual assault and a blow to the head, being kicked in the head while in Navy boot camp, and failing his swimming and survival training at boot camp. In addition, he alleges that he was convicted of a crime related to marijuana and served prison time at some point, which exacerbated his already existing mental illness. ECF No. 1.

Detailed facts about John's impairments and medical and procedural history can be found in the R&R, ECF No. 35, and in the administrative transcript, ECF No. 11, and will not be repeated here. However, the procedural history of John's case is noteworthy in that he filed his claim for disability benefits in 2011 and has had three hearings in front of an ALJ. After the first hearing was decided unfavorably at the administrative level, John filed an appeal in district court. Before the court ruled on the appeal, the Commissioner asked that the case be remanded so that an ALJ could update the medical record, obtain more evidence, and consider the effect of a VA determination that John was disabled. See Turner v. Comm'r of Soc. Sec., No. 5:13-cv-93 (W.D. Va. 2013). A supplemental hearing was held and the ALJ again issued an unfavorable decision. The Appeals Council found that the ALJ decision did not reflect consideration of evidence contained in the record prior to 2009 and sent the case to a different ALJ with instructions to develop the documentary evidence and obtain medical-

expert evidence to clarify the nature and severity of John's impairments. If the ALJ determined that John had a severe medical impairment prior to his date last insured, the ALJ was directed to complete the rest of the sequential evaluation process. The ALJ conducted the hearing and issued the third decision in John's case. John sought review from the Appeals Council, which found no reason to assume jurisdiction, making the ALJ determination the final decision of the Commissioner. John next filed the instant lawsuit seeking review of the Commissioner's decision.

In April 2000, John applied for non-service-connected pension benefits from the VA. In May 2006, the VA denied John's application, finding that the evidence did not show that he was permanently and totally disabled from his disabilities, which included a left hand injury, myopia, headaches, and schizophrenia. The denial noted that his impairments did not show marked interference with employment or frequent periods of hospitalization. R. 44. However, following a Compensation and Pension (C&P) psychological exam in 2009 where John was diagnosed with a psychotic disorder, John was awarded a non-service-connected pension on January 15, 2010, effective April 1, 2000. R. 48-49. John also was awarded Medicaid disability benefits by the Virginia Department of Rehabilitative Services (VDRS) on February 14, 2011, with an onset date of September 1, 2010. R. 380.

The ALJ in the instant case gave little weight to the VA determination that John is disabled and stated that the VDRS determination was of little probative value. R. 475-476. At issue is whether those findings were proper under the relevant regulations and case law.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

4

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" <u>Biestek v. Berryhill</u>, 139 S.Ct. 1148, 1154 (2019) (quoting <u>Consolidated Edison</u>

<u>Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by

substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); <u>Perales</u>, 402 U.S. at 401.

## IV.  Plaintiff's Objections

Many of John's objections are not clear, but he is proceeding <u>pro</u> <u>se</u> and the court

endeavors to construe the claims liberally. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 594 (1972) (noting

courts should hold <u>pro</u> <u>se</u> pleadings to less stringent standards than formal pleadings drafted

by lawyers). John makes the following objections to the magistrate judge's R&R: (1) The VA

was not a named defendant; rather, John intended for the VA to be amicus curiae in his lawsuit

seeking disability benefits and "its VA equivalent compensation and non-service connected

pension;" (2) the denial of benefits is a demonstration of the systemic discrimination that he

has endured based on the repression and suppression of the psychological manifestations of

his controversial sexuality; (3) he endured childhood trauma in the form of a concussion

related to a bicycle accident and also being sexually assaulted by an older boy; (4) the Navy

recruiter advised him to answer "No" to a question asking if he were homosexual; (5) in Navy

boot camp he was injured and nearly drowned and deemed unfit for seaworthiness because

he failed the swimming and survival training; (6) the Social Security Administration (SSA)

initially took note of his diagnosis of somnambulism during boot camp; (7) the fire aboard the

USS Forrestal captured his thought process and filled him with fear during his 1978 Navy

Career interview, effectively ending his active duty military service; (8) he did not flunk out of

his university graduate school program; rather he was able to return and regain his academic

standing; (9) the SSA record incorrectly states that his last somnambulistic experience occurred

when he was 12 or 13; (10) the SSA record incorrectly states that he was growing marijuana when he actually was "true-claim confronting" the VA's and University of Virginia's denial of medical marijuana; and (11) the VA finding that he was entitled to benefits should be applied to his SSA claim.

## A. Dismissal of VA as Defendant

On June 20, 2019 the VA filed a motion for more definite statement and John responded by filing an additional pleading. ECF Nos. 16, 17. The VA next moved to dismiss for failure to state a claim and John responded on July 15, 2019. ECF Nos. 18, 23. In the R&R, the magistrate judge recommended dismissal of the lawsuit against the VA, finding that it is not a proper defendant to an action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 35 at 24. The magistrate judge also recommended denying the motion for more definite statement as moot, because John's later filings provided the requested information. Id. John did not object to the magistrate judge's recommendation and clarified that he intended for the VA to act as amicus curiae in his case. Accordingly, the court adopts the recommendation of the magistrate judge, **GRANTS** the VA's motion to dismiss, and **DISMISSES** the VA as a defendant in this lawsuit. The court **DENIES** as moot the VA's motion for more definite statement.

## B. Period of Disability

John alleged an onset date of March 6, 2000 and the ALJ found that he last met the insured status requirements on December 31, 2000. R. 471-472. In the R&R, the magistrate judge noted that the only issue in the case was whether substantial evidence supported the ALJ's conclusion that John did not have a severe medically determinable impairment on or

8

before December 31, 2000. ECF No. 35 at 19. John did not object to that finding. Therefore, the court finds that John's alleged onset date was March 6, 2000 and his date last insured (DLI) was December 31, 2000.

### C. Objections

John's objections two through ten, set out above, either rehash the arguments he made to the magistrate judge or do not address the findings of the magistrate judge. The only issue in this case is whether the ALJ's determination that he was not disabled at Step 2 of the sequential evaluation is supported by substantial evidence. Because objections two through ten do not address the magistrate judge's conclusion that the ALJ's determination was supported by substantial evidence, they are **OVERRULED**.

Based on John's eleventh objection, the court will consider <u>de novo</u> whether the VA finding that he was entitled to benefits should be applied to his SSA claim. In light of the recent Fourth Circuit decision in <u>Kiser v. Saul</u>, ___ F. App'x ___, 2020 WL 4362119 (4th Cir. 2020), the court also will address whether the ALJ adequately considered the finding by the VDRS that John was entitled to Medicaid benefits as of September 1, 2010.

### D. Medically Severe Impairment

The ALJ found John "not disabled" at the second step of the five-step sequential evaluation.[2] At Step 2 of the evaluation process, the ALJ must determine whether the claimant

---

[2] In assessing a claimant's eligibility for Social Security benefits, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends

has a medically determinable impairment that is "severe," or a combination of impairments that is "severe." An impairment is "not severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). See also SSR 85-28, 1985 WL 56856 (SSA 1985) ("[A]n impairment(s) that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.")

Basic work activities include the following:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b). If an ailment is controlled by medication or treatment such that it does not cause work-related limitations, it is not considered severe. Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986).

---

with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first three steps and the burden shifts to the Commissioner on the fifth step. Id.

### (1) Medical Evidence

The ALJ noted that there are no medical records dating from John's alleged onset date through his date last insured. R. 473. John did not challenge this finding either to the magistrate judge or in his objections to the magistrate judge's findings. Medical records related to his service in the Navy and Navy Reserves indicate that from 1967 through 1993 John consistently described himself as being in good health and denied trouble sleeping, depression or excessive worry, loss of memory or amnesia, or nervous trouble of any sort. Nor did routine exams indicate psychiatric issues. See, generally, R. 816-977. He reported having episodes of sleepwalking as a child and young man, but the last reference to sleepwalking in the record was from 1966. R. 473. He retired from military service in 1994. R. 351, 378.

In 2003, while incarcerated at Rockbridge Regional Jail, John was seen and evaluated by a psychologist after another inmate reported that John was "odd" and posed a danger to himself. R. 1030. The psychologist noted that John presented with an unusual affect, but after he warmed up his affect appeared less odd. He denied depression and suicidal ideation and reported long-term marijuana use. He denied having a psychiatric crisis and said he would seek counseling if he needed it. R. 1286.

John was evaluated by psychologist Christopher Muller in September 2009 as part of a C&P exam by the VA to determine whether he was precluded from working because of his various disabilities. Dr. Muller noted that there were numerous records in the VA file indicating that John was making an effort to make service-related claims for schizophrenia or for a condition he called "existential neurosis." It was further noted that there were "numerous examples of long rambling disjointed statements in the claims file." R. 1254.

John described a very limited work history, working for the United States Postal Service on three occasions, but never for more than five months, and two other jobs, but neither lasting for more than nine months. He worked on a Christmas tree farm he inherited from his parents but made only about $400 per year from the farm. When asked about his limited work history, John had difficulty giving a concise answer but eventually stated that he could not make commitments and that he expects to fail so he does not try to do things. He later commented that work was not for him because it was too stressful. The psychologist commented that he was somewhat surprised that John was able to spend so much time in the Navy Reserves given his unusual manner and symptomology. R. 1255. John had experienced some significant legal problems, including serving five years on probation for growing marijuana and serving three months in jail in 2003 for contributing to the delinquency of a minor after he bought beer for an underage person. R. 1256.

Dr. Muller described John's affect as broad and "almost overly bright" and his mood was "quite euthymic," although he became tearful when talking about his deceased daughter. He had significant impairment of thought processing and communication and his thinking and speech were tangential and circumstantial. He denied hallucinations but had some quite unusual thought processing and content. The psychologist diagnosed John with a psychotic disorder, not otherwise specified, and concluded that his symptoms would impair employment as well as likely interfere with social interactions with other people. R. 1257-1258.

John was seen by psychiatrist Anjali Varma, M.D., in July 2011, who described him as a poor historian, with an illogical thought process that was disorganized with loose associations, and said he had problems with communication. John wished for a psychotic

medication that would act like marijuana so it would help him calm down. R. 640-641. John talked about demons that scared him at night but turned into Easter lilies in the morning. He also said he was visited by his daughter who died when she was 13, and said he had communication with the Lord and his higher power. R. 641. He did not appear to be hallucinating during the exam but did report seeing visions of things not seen by others. Id. He said he had never received any psychiatric treatment and had not been in touch with a psychiatrist on an inpatient or outpatient basis. He lived in a camper on a Christmas tree farm and received Meals on Wheels. Id. John reported a very poor work history and said he had never been able to sustain a job for a relatively prolonged time. He lived on his Navy pension and food stamps. R. 643.

The mental status examination showed John to have comprehensible but markedly disorganized speech. He was difficult to redirect and had significant loosening of association, circumstantiality, and tangentiality. He tended to perseverate frequently. R. 644.

The psychiatrist diagnosed John with a psychotic disorder not otherwise specified, and cannabis use versus dependence, in remission, and prescribed Seroquel. John was not believed to be a threat to himself or others and was not a candidate for involuntary commitment or hospitalization. R. 644.

In October 2013 John underwent an assessment by a psychiatrist who noted that it was difficult to keep him on task or theme and that John stated repeatedly that marijuana was the only thing that made him feel better and he did not want to take conventional medications. He reported psychotic symptoms, including visual hallucinations, premonitions, and

delusions. He was diagnosed with a psychotic disorder with a differential diagnosis of schizophrenia by history. R. 622-628.

At the 2016 ALJ hearing, John waived his right to appear and the ALJ heard testimony from psychologist Gary Bennett, Ph.D., who appeared as a medical expert (ME). Dr. Bennett reviewed the medical records and testified that starting in 2009 John was diagnosed with schizophrenia and psychotic disorder not otherwise specified, along with a history of marijuana use which constituted a diagnosis of cannabis abuse. The 2009 diagnoses were insufficient to indicate that John had the impairments prior to December 31, 2000. R. 1325-1326. Dr. Bennett commented that it was possible that John was having some symptoms prior to that date, but they became more prominent later. R. 1326-1327.

### (2) ALJ Determination

In finding that John did not have a severe impairment or combination of impairments prior to his DLI of December 31, 2000, the ALJ reviewed the medical records generated while he was in the Navy and Navy Reserves, as described above. She also considered John's other evidence, such as his efforts to have his military record corrected to show that he was unfit for duty by reason of a physical disability, which was denied; a comment from a graduate school counseling program that John should not pursue counseling training; a "statement of the case" that was part of the 2006 VA denial of his application for a non-service-connected pension; and the ME hearing testimony. R. 473-475.

The ALJ also referred to the finding that John was disabled for purposes of eligibility for Medicaid disability as of September 1, 2010 and was found to not be entitled to Virginia State Hunting, Fishing, and/or Trapping license certification as he was not designated

14

permanently and totally disabled by the VA. The ALJ concluded that the findings were of little probative value as to whether John had a severe impairment prior to December 31, 2000. As discussed below, the ALJ noted the determination of the VA that John was entitled to a non-service-connected pension on January 15, 2010, effective April 1, 2000, but gave little weight to the determination. R. 475.

The ALJ acknowledged that a fellow inmate described John as "odd" in 2003, that he was a prolific letter writer, and that he had asserted that he had a mental disorder after his retirement from the Navy Reserves, but not at discharge. However, he was not diagnosed with a mental disorder prior to his DLI and the ALJ concluded that the probative evidence as a whole did not show by a preponderance that he had an impairment or combination of impairments that significantly limited his ability to perform basic work activities prior to his DLI. R. 476-477. Thus, she found that he was not disabled for purposes of the Social Security Administration.

In reviewing the ALJ's decision, the magistrate judge concluded that while the record may support a finding that John currently struggles with mental health symptoms, his filings failed to identify any legal error or point to specific evidence not considered by the Commissioner that might have changed the outcome of his disability claim. The magistrate judge found that John was asking the court to reweigh the allegations and exhibits presented to the Commissioner and such reweighing is not permitted in an appeal of a Social Security decision to a district court. Accordingly, the magistrate judge concluded that the Commissioner's decision was supported by substantial evidence and should be affirmed. ECF No. 35 at 23.

As discussed above, the bulk of John's objections are overruled because they do not address the ALJ's finding that he was not disabled at Step 2 of the sequential evaluation and the magistrate judge's conclusion that the finding was supported by substantial evidence. However, the court will address John's objection that the ALJ should have found persuasive the fact that the VA found him disabled. Also, even though John did not raise the issue, the court will examine whether the ALJ properly weighed the finding that John was entitled to Medicaid benefits as of September 1, 2010.

### (3) Deference Owed to VA Finding

In <u>Bird v. Comm'r of Soc. Sec.</u>, 699 F.3d 337, 343 (4th Cir. 2012), the Fourth Circuit examined the weight that the SSA must give a VA disability rating, noting that in <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 n. 1 (4th Cir. 1983), the court had held that the disability determination of a state administrative agency is entitled to consideration in an SSA disability proceeding. <u>Bird</u>, 699 F.3d at 343. The court further noted that SSA directives require the SSA to consider all record evidence relevant to a disability determination, including decisions by other agencies. <u>Id.</u> (citing SSR No. 06-03p, 71 FR 45593-03, 2006 WL 2263437 (2006)). However, the SSA regulations make clear that although the SSA will accept another agency's disability determination as evidence of a claimant's condition, the other agency's decision is not binding on the SSA. <u>Id.</u> (citing 20 C.F.R. §§ 404.1504, 404.1512(b)(5)). "The assignment of at least some weight to a VA disability determination reflects the fact that both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." <u>Id.</u> (citing <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002)). The Fourth Circuit concluded the following:

16

> [I]n making a disability determination, the SSA must give substantial weight to
> a VA disability rating. However, because the SSA employs its own standards for
> evaluating a claimant's alleged disability, and because the effective date of
> coverage for a claimant's disability under the two programs likely will vary, an
> ALJ may give less weight to a VA disability rating when the record before the
> ALJ clearly demonstrates that such a deviation is appropriate.

Id. Bird was a Vietnam veteran who sought disability benefits from the SSA based on a

diagnosis of PTSD. His DLI for SSA benefits was March 31, 2005. He applied for VA benefits

and was granted a 100 percent disability rating effective June 9, 2006. Id. at 339. There were

no medical records dating before his DLI and the first medical evidence in the record was a

2006 visit to a VA clinic, where he stated that he had not obtained treatment for many years.

Id. Bird was evaluated by two VA psychologists who diagnosed him with PTSD and

determined that he was unable to work. Id. at 339-40.

Bird applied for SSA benefits in 2006 and the ALJ found that although Bird suffered

from PTSD before his DLI, his impairment was insufficiently severe to qualify him for

benefits. The determination was based in part on the lack of medical evidence created before

Bird's DLI and the fact that the VA decision became effective in June 2006, the month he

applied for VA benefits, which was fifteen months after his DLI. Id. at 340.

Bird challenged the determination in district court, which affirmed the decision of the

Commissioner. On appeal, the Fourth Circuit first noted that retrospective consideration of

post-DLI evidence could be cogent proof of a claimant's pre-DLI disability. Id. at 341 (citing

Johnson v. Barnhart, 434 F.3d 650, 656 and n. 8 (4th Cir. 2005) and Moore v. Finch, 418 F.2d

1224, 1226 (4th Cir. 1969)). The court concluded that the ALJ should have given retrospective

consideration to the 2006 and 2007 medical evidence because both found that Bird had

suffered from severe symptoms of PTSD before his DLI, and one report found that he had

suffered from PTSD since he had returned from military service in Vietnam. Id. In addition,

both Bird and his wife testified that he had suffered from his various PTSD symptoms for

many years prior to applying for benefits. Id. at 342. The court found that it was an error of

law for the ALJ to disregard the VA decision, and remanded the case, with instructions that

the ALJ would be required to first review all the evidence in the record to determine whether

Bird was disabled at any time, and if such a finding was made, the ALJ would need to obtain

the assistance of a medical advisor to determine the onset date. Id. at 344-345.

In John's case, the ALJ noted that in 2006 the VA did not initially find that John was

entitled to a non-service-connected disability, but that in 2010 he was awarded the disability-

based pension effective April 1, 2000. R. 476. The ALJ described the evidence relied upon by

the reviewing officer, including evidence from the graduate school program which told John

he should not pursue a counseling degree, records from the examination of John when he was

at the Rockbridge Regional Jail, records from the Circuit Court of Augusta County, the August

3, 2009 C&P report, and John's various filings and statements.

The ALJ gave the VA findings and decision little weight, stating that the opinion of

both the VA psychologist and VA decision review officer had to be viewed in context. The

ALJ noted that the VA and the SSA define disability differently and the procedures employed

to evaluate disability are based on different definitions, procedures and assumptions. As an

example, she pointed out that in VA determinations, if a reasonable doubt arises regarding the

degree of disability, it is resolved in favor of the claimant, 38 C.F.R. § 3.102, 4.3, while the SSA

uses a preponderance of the evidence standard. The ALJ did not further discuss the VA

determination. R. 476.

18

The reason given by the ALJ for discounting the VA decision is inadequate in light of Bird. The different burdens of proof cited by the ALJ existed at the time Bird was decided. Although the court did not discuss the burdens, it did comment that "[b]ecause the purpose and methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." Bird, 699 F.3d at 343. The court then concluded that the SSA must give substantial weight to a VA opinion unless the record indicates a reason to give it less weight. Id.

Moreover, the difference in the standards cited by the ALJ exists in all situations where claimants have applied for VA and SSA benefits. Using the ALJ's reasoning would mean that VA determinations are never considered by an ALJ, a result clearly prohibited by Bird. See Gross v. Comm'r of Soc. Sec., No. WDQ-13-1274, 2014 WL 3672878 (D. Md. 2014) (finding that the ALJ's rejection of VA decision because standards utilized by the VA for disability benefits differ from standards used by SSA amounted to a blanket refusal to consider any VA decision despite its validity). The ALJ in John's case did not discuss the record when she decided to give the VA opinion little weight and the reason she gave for discounting it is inadequate under Bird.

To be sure, the ALJ correctly noted that except for one report of somnambulism in 1966, there were no reports of symptoms of mental disorders in any of the military health records produced from 1967 through 1993. John consistently reported that he was in good health, there were no findings of depression or excessive worry, and he always was found suitable for retention in the military. Thus, unlike Bird, medical evidence from more than

twenty years of John's service in the military did not indicate that he was suffering from a mental impairment.

However, at some point between 1994 when John retired from the military, and 2009, when he was examined by the psychologist for the C&P determination, John's mental health deteriorated such that the VA determined that he was unable to work. The VA further determined that he was disabled as of April 1, 2000, which was before his DLI for purposes of the SSA. In accordance with <u>Bird</u>, the ALJ should have started from the premise that the VA determination was due substantial weight, and then specified the evidence in the record showing that it was entitled to less than substantial weight. Because she did not do so, the court finds that her decision is not supported by substantial evidence.

In addition, the ALJ did not give retrospective consideration to the post-DLI evidence in the record. The VA relied in part on the 2009 C&P assessment, to which the ALJ gave little weight because the psychologist stated that John <u>currently</u> had symptoms that would interfere with employment and social interactions, but did not state that symptoms were present or affected his ability to work prior to his DLI. R. 476 (emphasis in original). However, the psychologist also stated that he found it surprising that John was able to spend so much time in the Navy Reserves, given his unusual manner and symptoms. Also, while the ALJ noted that Dr. Varma examined John in 2011 and diagnosed him with a psychotic disorder and cannabis abuse versus dependence, the ALJ did not discuss the weight she gave the opinion. And the ALJ made no mention of the 2013 psychiatric assessment where John once again was diagnosed with a psychotic disorder after reporting visual hallucinations, premonitions, and delusions.

The court stated in <u>Bird</u> that "medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." <u>Bird</u>, 699 F.3d at 340. Similarly, in <u>Moore</u>, 418 F.3d at 1226, the Fourth Circuit remanded a case when an SSA examiner considering allegations of a mental impairment failed to consider evidence produced six or seven years after the claimant's DLI because "the record [was] not so persuasive as to rule out any linkage of the final state of [the claimant] with his earlier symptoms."

Applying the principles discussed in <u>Bird</u>, the court concludes that the ALJ should have given retrospective consideration to the 2011 and 2013 psychiatric reports and should have described with specificity her reasons for discounting the 2009 mental health evaluation. It is not sufficient that the reports were distant in time from the DLI. <u>See</u> <u>Powers v. Colvin</u>, No. 1:14CV272, 2015 WL 213189 (M.D.N.C. 2015) (finding legal error when ALJ failed to consider and weigh 2008 and 2011 VA disability determinations which were relevant to the time period before his DLI in 2006); and <u>Gross</u>, 2014 WL 3672878 at *3  (remanding where ALJ failed to consider VA decision issued in 1993 that related to claimant's alleged impairment even though DLI was November 21, 1984).

Indeed, at the ALJ hearing in 2016, the ME acknowledged that it was possible that John was experiencing symptoms of schizophrenia or psychotic disorder prior to his DLI, but that they "certainly became more prominent after the date in question." R. 1327. This comment is significant in two respects. First, the ALJ found John not disabled at Step 2 of the sequential evaluation, which required a finding that John's mental impairment was a slight abnormality that had no more than a minimal effect on his ability to understand, carry out,

21

and remember simple instructions; use judgment; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1522; SSR 85-28, 1985 WL 56856 (SSA 1985). If John were experiencing symptoms of schizophrenia or a psychotic disorder in 2000, they might very well have had more than a minimal effect on his ability to do basic work activities and the ALJ should have taken the post-DLI evidence into consideration at Step 2 of the evaluation.

Second, <u>Bird</u> instructs that an ALJ should first review all the evidence in the record to determine whether the claimant was disabled at any time, and if so, obtain the assistance of a medical advisor to determine the onset date. <u>Bird</u>, 699 F.3d at 345. Despite the post-DLI evidence showing John has a serious mental impairment, the ALJ did not determine whether John was disabled after his DLI. Her failure to do so is an additional reason warranting remand of this case.

For the above reasons, John's objection that the ALJ should have given greater weight to the findings of the VA is **SUSTAINED** and John's case is remanded. On remand, the Commissioner should address the disability determination of the VA and consider the post-DLI evidence in a manner consistent with <u>Bird</u>.

### (4) Deference Owed to Medicaid Finding

On February 14, 2011, the VDRS found John disabled for purposes of receiving Medicaid with an onset date of September 1, 2010. R. 380. The ALJ commented that the finding was of little probative value as to whether John had a severe impairment prior to his DLI. R. 475. In <u>Kiser</u>, 2020 WL 4362119, the court reiterated its holding in <u>Woods v. Berryhill</u>, 888 F.3d 686, 692 (4th Cir. 2018), that an ALJ should have given substantial weight to a

decision by the North Carolina Department of Health and Human Services because both that agency and the SSA provide disability benefits to "'serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability'" and because the state agency's provision of Medicaid is for those who are considered disabled for purposes of the SSA. Kiser, 2020 WL 4362119 at *4 (quoting Woods, 888 F.3d at 692 and Bird, 699 F.3d at 343).

An ALJ may afford less than substantial weight to another agency's determination only if the ALJ provides "'persuasive, specific, valid reasons for doing so that are supported by the record.'" Id. (citing Woods, 888 F.3d at 692 and quoting McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)). The ALJ in John's case provided no explanation for not giving the VDRS determination substantial weight.[3] The court can guess at reasons upon which the ALJ might have relied to discount the VDRS determination, but without an explanation by the ALJ, a reviewing court "'cannot engage in meaningful review.'" Id. (quoting Woods, 888 F.3d at 693). Although John did not state an objection to the ALJ's finding that the Medicaid determination was entitled to "little probative value," on remand the Commissioner is directed to consider the finding in accordance with the holdings in Kiser and Woods.

## V. Conclusion

For the reasons stated, the court **ADOPTS** in part and **REJECTS** in part the R&R, ECF No. 35, filed in this case. The court finds that the magistrate judge erred in determining that substantial evidence supported the ALJ's assessment of John's mental impairment from

---

[3] Although the ALJ decision predated the decision in Woods, it was issued several years after Bird, which set out the standard that agency findings of disability should be given substantial weight.

the date of onset through his date last insured. As such, the court **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion. The court **ADOPTS** the recommendation that the VA should be dismissed as a defendant in this lawsuit and **DISMISSES** the VA from the lawsuit.

In sum, the VA's motion for more definite statement, ECF No. 16, is **DENIED as moot**; its motion to dismiss, ECF No. 18, is **GRANTED**; the SSA's motion for summary judgment, ECF No. 21 is **DENIED**; John's requests that this case be held in abeyance, ECF Nos. 30 and 31 are **DENIED**.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 08-31-2020

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge